UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Criminal No.
09-10139-JLT

UNITED STATES OF AMERICA

v.

TOBIAS JORDAN

**MEMORANDUM OF DECISION AND ORDER**
**ON DEFENDANT'S MOTION FOR DISCOVERY**

February 23, 2010

DEIN, M.J.

## I. INTRODUCTION

This matter is before the court on the defendant's "Motion to Discover" (Docket No. 41). In anticipation of filing a motion to suppress a firearm discovered during a search conducted pursuant to a State search warrant, the defendant is seeking "credibility information" relating to a confidential informant.[1] After consideration of the

---

[1] Specifically the defendant is seeking the following, with identifying information redacted:

A. Any and all criminal records of the confidential informant;

B. Any and all confidential informant agreements that the informant had with the Fall River Police Department and/or any other police department;

C. Any and all information as to whether the informant's purchases from "Necy" within "the past few weeks" time period referenced in the Affidavit were controlled buys or led to the arrest of the informant and/or violation of any confidential informant agreement; and

D. Any and all information that would have impacted on the reliability of the informant at the time Detective Nadeau applied for the Search Warrant.

Def. Motion to Discover.

parties' oral and written arguments, and for the reasons detailed herein, the defendant's motion is DENIED WITHOUT PREJUDICE. The production of evidence relating to the reliability of the confidential informant who provided information in connection with the search warrant affidavit must await at least a preliminary showing that the search warrant affidavit contained material false information or omissions, and that there was no probable cause for the search warrant absent the disputed material.

## II. BACKGROUND[2]

On January 20, 2009, members of the Fall River Police Department conducted a search of an apartment located on Fifth Street in Fall River, Massachusetts (the "Apartment"), where a female known as "Necy" resided. This search was executed pursuant to a search warrant (the "Warrant") obtained by Detective Bryan Nadeau of the Fall River Police Department.[3] Detective Nadeau had been a police officer for approximately eight years at the time. In seeking the Warrant, Detective Nadeau partially relied on a confidential informant ("CI") who provided information directly to Detective Nadeau. According to Detective Nadeau's search warrant affidavit, this CI had provided information in the past to the Fall River Police Department that resulted in no less than seven arrests with seizures of crack cocaine and cocaine. Of the seven, two had led to convictions while the other cases were still pending.

---

[2] The following background information is based on the materials the parties submitted in connection with the instant motion as well as the criminal complaint issued by this court.

[3] A copy of the Warrant is attached to the government's opposition to the motion.

According to the search warrant affidavit, the CI had purchased crack cocaine from Necy on several occasions in the past few weeks in the hallway outside the Apartment. The CI described Necy as a black female in her early thirties, approximately 5'7" tall, weighing approximately 150 lbs, with dark hair. According to the CI, Necy lived in the apartment with several children and a black male in his thirties with "dreads" for hair.

Using this information, Detective Nadeau investigated the identities of the occupants of the apartment building. He found that Latitia Weeden resided at this address. The CI was shown a picture of Ms. Weeden, and identified her as Necy from whom the CI had purchased drugs. Detective Nadeau personally confirmed the CI's description of the building where s/he went to purchase drugs, and personally observed a female who met the description of Necy entering and exiting the building.

Within 72 hours prior to the submission of the search warrant application, Detective Nadeau set up a controlled buy, using the CI to purchase crack cocaine from Necy. Detective Nadeau undertook the standard precautions in searching the CI before and after the buy, observed the CI enter the building to buy drugs, and observed the CI leave the building with a plastic baggy with a rock-like substance which was consistent with crack cocaine. The CI reported that s/he had purchased the drugs from Necy.

Detective Nadeau applied for and received a search warrant to search the Apartment for drugs. Ms. Weeden and the defendant Tobias Jordan were present at the Apartment when the warrant was executed. Marijuana and crack cocaine were

found in the Apartment.  In addition, Mr. Jordan directed investigators to a loaded handgun in the bedroom.  He has been charged with being a felon in possession of a firearm.  He has not been charged with any drug offense.

### III.  DISCUSSION

#### A.  The Government's Obligation to Disclose Exculpatory Material

Defendants have no general constitutional right to discovery in criminal proceedings.  Weatherford v. Bursey, 429 U.S. 545, 559, 97 S. Ct. 837, 846, 51 L. Ed. 2d 30 (1977).  However, the Supreme Court held in Brady v. Maryland that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."  Brady v. Maryland, 373 U.S. 83, 87, 83 S. Ct. 1194, 1196-97, 10 L. Ed. 2d 215 (1963).  The Government's obligation to disclose exculpatory information includes evidence that may be used to substantially impeach the credibility of a Government witness.  United States v. Bagley, 473 U.S. 667, 678, 105 S. Ct. 3375, 3381, 87 L. Ed. 2d 481 (1985); Giglio v. United States, 405 U.S. 150, 154, 92 S. Ct. 763,766, 31 L. Ed. 2d 104 (1972).  The touchstone of the Government's disclosure obligations is the "materiality" of the information, that is, evidence for which "there is a reasonable possibility that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." Kyles v. Whitley, 514 U.S. 419, 433, 115 S. Ct. 1555, 1565, 131 L. Ed. 2d 490 (1995) (citing United States v. Bagley, 473 U.S. at 682, 105 S. Ct. at 3383).

**B.    Challenging a Search Warrant**

Pursuant to rights secured by the Fourth Amendment, a criminal defendant may challenge the validity or sufficiency of a search warrant based on its supporting affidavit.  See United States v. Genao, 281 F.3d 305, 308 (1st Cir. 2002).  If the defendant successfully challenges the warrant by a motion to suppress, the exclusionary rule may bar the admission of evidence discovered as a result of the warrant.  See United States v. Brunette, 256 F.3d 14, 19 (1st Cir. 2001).  As a general matter, there is a presumption of validity with respect to an affidavit supporting a search warrant.  United States v. Valerio, 48 F.3d 58, 62 (1st Cir. 1995) (citing Franks v. Delaware, 438 U.S. 154, 171, 98 S. Ct. 2674, 2685, 57 L. Ed. 2d 667 (1998)).  However, a defendant may attack a warrant by showing that the affidavit contained material false statements or omissions and therefore failed to establish probable cause for the search.  United States v. Castillo, 287 F.3d 21, 25 (1st Cir. 2002).

The law is clear that the defendant does not have an automatic right to a hearing when challenging a search warrant.  Rather, "[a] defendant is entitled to an evidentiary hearing under Franks where the defendant 'makes a substantial preliminary showing' that both (1) 'a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit' and (2) 'the allegedly false statement is necessary to the finding of probable cause.'"  United States v. Reiner, 500 F.3d 10, 14 (1st Cir. 2007) (quoting Franks, 438 U.S. at 155-56, 98 S. Ct. at 2676).  Alternatively, the omission of a material fact may trigger a Franks hearing if the defendant makes "'a substantial preliminary showing' that, considering the previously

withheld material, [the] affidavit fails to demonstrate probable cause." Id. (internal citation omitted).

A Franks hearing does not test the credibility of an informant, rather it "is addressed to the veracity and care of the affiant." United States v. D'Andrea, 497 F. Supp. 2d 117, 124 (D. Mass. 2007). As the Franks court explained:

> To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained.

Franks, 438 U.S. at 171, 98 S. Ct. at 2684. See also United States v. Rodriguez, No. 08-10312-RWZ, 2009 WL 5174685, at *1 (D. Mass. Dec. 18, 2009) (defendant must challenge "specific portions of the affidavit, and provide supporting reasons supplemented with affidavits or otherwise reliable statements of witnesses."). The present motion raises the question whether a defendant is entitled to credibility information in order to make the required preliminary showing.

### C. Discovery Prior to a Franks Hearing

To the extent that the government has information tending to cast doubt on or contradict the information set forth in the search warrant affidavit, that information should be produced pursuant to Local Rule 116.2(A)(2) and 116.2(B)(1)(b). In those Rules, "exculpatory evidence" is defined as including information that tends to:

> Cast doubt on the admissibility of evidence that the government anticipates offering in its case-in-chief, that might be subject to a motion to suppress or exclude, which would, if allowed, be appealable pursuant to 18 U.S.C. § 3731[.]

L.R. 116.2(A)(2). Since establishing that the search warrant affidavit contains false information is the first step in challenging the warrant, information that casts doubt on the accuracy of the information in the search warrant affidavit may "cast doubt on the admissibility of evidence the government anticipates offering in its case-in-chief," *i.e.* the fruits of the search. Such information must be produced promptly in accordance with L.R. 116.2(B)(1)(b).

However, the defendant in the instant case is seeking information relating to the reliability of the confidential informant who provided information in connection with the search warrant. There is no question that in analyzing a warrant's validity, a court may assess a source's reliability or personal background. See United States v. Burke, 999 F.2d 596, 598 (1st Cir. 1993) (finding confidential informant's statements reliable because they were based on personal knowledge and corroborated by officer's prior knowledge of defendant); United States v. Campbell, 732 F.2d 1017, 1019 (1st Cir. 1984) (finding confidential informant to be reliable because of lack of criminal history or known criminal contacts); United States v. Levasseur, 699 F. Supp. 965, 986 n.36 (D. Mass.), rev'd in part on other grounds 846 F.2d 786 (1st Cir. 1988) (finding "beyond question" that the affiant should have provided information concerning the government informant's extensive psychiatric history to the magistrate). Moreover, the courts "recognize that when an affidavit relies primarily on information provided by a CI, a

defendant will lack the information needed to make a *Franks* showing." United States v. Manning, 79 F.3d 212, 220 (1st Cir. 1996), and cases cited. However, the fact that as a general statement the individual providing the information was not reliable does not entitle the defendant to a Franks hearing. Rather, regardless of the reliability of the informant, the defendant must still challenge specific allegations contained in the affidavit and the court must assess whether probable cause existed without consideration of the challenged information.

In light of this burden, the production of "reliability" information should await an initial showing, at a minimum, that there are inaccuracies in the affidavit and that if the challenged information is omitted, there is no probable cause for the warrant.[4] Such a two-stage procedure is consistent with prior case law. For example, the First Circuit has recognized that the trial judge has "discretion to determine what type of hearing is necessary, if any, to determine the veracity of the affiant in cases where the defendant has alleged that the affidavit contains false information, but has failed to make a 'substantial preliminary showing' that the *affiant* has lied such as that which would require a *Franks* hearing." United States v. Higgins, 995 F.2d 1, 3 (1st Cir. 1993) (quoting United States v. Giacalone, 853 F.2d 470, 477-78 n.1 (6th Cir. 1988)). In other words, the Court recognized that there may be a need for additional discovery to entitle a defendant to a Franks hearing even after an initial showing of falsities in the search

---

[4] Since the question whether the affiant knew of the inaccuracies in the affidavit may be related to the reliability of the informant who provided the information, in the instant case the defendant would not be required to make an initial showing concerning the affiant's knowledge before seeking reliability discovery.

warrant affidavit.  Similarly, in United States v. Williams, 143 F.R.D. 24 (D. Mass. 1992), the court addressed whether the defendant was entitled to discovery concerning the track record of an informant in order to develop a factual basis upon which to file a Franks motion.  Relying on United States v. Brian, 507 F. Supp. 761 (D.R.I. 1981), aff'd sub nom, United States v. Southard, 700 F.2d 1 (1st Cir.), cert. denied sub nom, Ferris v. United States, 464 U.S. 823, 104 S. Ct. 89, 78 L. Ed. 2d 97 (1983), the Williams court ruled that the defendant, "in order to be entitled to any discovery on the issue, must: deny, via affidavit, specific facts attributed to them by informants and make some minimal showing of inconsistency on the face of the government's material which supports an assertion of deliberate falsehood or reckless disregard for the truth." 143 F.R.D. at 25 (internal quotations omitted).

    Defendant argues that Local Rule 116.2(A)(2) alters Williams and requires the immediate production of reliability information.  This court disagrees.  The Local Rules provide for the disclosure of "reliability" information only with respect to a "witness whom the government anticipates calling in its case-in-chief."  See L.R. 116.2(B)(1)(c)-(e), 116.2(B)(2)(a)-(g).  In other words, reliability information may be exculpatory, but only with respect to testifying witnesses.  In the Franks context, the reliability of those providing information to the affiant only becomes relevant (and potentially exculpatory) if the information provided was false, and having stricken that information there was insufficient evidence to establish probable cause.  Thus, requiring an initial showing by the defendant before allowing the production of reliability information is not inconsistent with the Local Rules.

In the instant case, the defendant has not made any showing that there are any inconsistencies in the affidavit, or any reason to believe that the information provided by the CI to Detective Nadeau was inaccurate, much less that Detective Nadeau acted with reckless disregard for the truth. This court finds that at least such a minimal showing is needed before discovery should be allowed.

The defendant's request for discovery must fail for the additional reason that the substance of the requested information is disclosed in the search warrant affidavit. For example, it is clear from the affidavit that the CI made illegal purchases of unlawful narcotics prior to the controlled buy set up by Detective Nadeau ("The CI stated that for the past few weeks, IT has bought amounts of crack cocaine from a female that IT knows as 'Necy.'"). It is also clear that the CI had provided information as a "reliable/confidential informant" in the past. Thus, while all the details of the CI's past criminal record or the formality of any informant agreements may not have been disclosed, the clerk-magistrate issuing the warrant was "on notice that the 'confidential informant was not a model citizen' and that he had previously violated laws." United States v. Avery, 295 F.3d 1158, 1168 (10th Cir. 2002) (citation omitted). In addition, the clerk-magistrate knew that some of the information that the CI had provided had proved to be reliable and had led to seven arrests and two convictions, with the other matters still pending. "Given the general background knowledge magistrate[s] . . . have about confidential informants, the specific information the magistrate . . . had about this confidential informant's prior drug activity, and this informant's past reliability, it is improbable that a specific recitation of the confidential informant's criminal history

would have influenced the magistrate['s] . . . decisionmaking process or assessment of the informant's veracity." Id.  This is particularly true given the fact that the controlled buy took place shortly before the warrant was executed, and the Detective had corroborated many facts, including, without limitation, the description of Necy and her residency in the building.  See Id. ("the affidavit's description of the controlled buy . . . strongly corroborated the informant's claim that drugs were being sold from the residence"); United States v. Genao, 281 F.3d at 308 ("a properly conducted controlled buy is formidable evidence to support a search.").

In sum, in light of the absence of any indication that there was false information contained in the search warrant affidavit, and the fact that the substance of the requested information was disclosed in the affidavit and further clarification would not have resulted in the application for the search warrant being denied, the defendant is not entitled to discovery about the reliability of the informant.[5]

### IV.  **CONCLUSION & ORDER**

For the reasons detailed herein, the defendant's request for reliability information concerning the CI who provided information in connection with the search warrant is DENIED WITHOUT PREJUDICE, subject to renewal if the defendant submits evidence that the search warrant affidavit contained false information and that absent such evidence the court lacked probable cause for the warrant.

---

[5]  In light of this holding, this court will not address the government's argument that the request for discovery was not timely.  While this court does generally require adherence to the discovery schedule set forth in the Local Rules and in court orders, the change in defense counsel in this case justified some flexibility and a somewhat altered schedule.

                                     / s / Judith Gail Dein  
                                    Judith Gail Dein  
                                    United States Magistrate Judge